UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE'S TRAIN HOUSE, INC.,

     Plaintiff,

vs.

KOREA BRASS CO., LTD., et al.

     Defendants.

Case No.  06-CV-10375

Judge John Corbett O'Meara

Magistrate Judge Donald A. Scheer

---

**GUREWITZ & RABEN, P.C.**
Harold Gurewitz (P14468)
Margaret M. Raben (P39243)
Attorneys for Plaintiff
333 West Fort Street, Suite 1100
Detroit, Michigan  48226
(313) 628-4740

**STEVENS & LEE, P.C.**
Charles J. Bloom (PA 10086)
Jeffrey D. Bukowski (PA 76102)
Attorneys for Plaintiff
111 North Sixth Street
Reading, Pennsylvania 19603-0679
(610) 478-2215

**KOHN, SWIFT & GRAF, P.C.**
Robert A. Swift
Robert J. LaRocca
Attorneys for Plaintiff
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
P. Rivka Schochet (P52921)
Thomas G. Parachini (P22832)
Marcy L. Rosen (P67561)
Attorneys for Defendant Model Korea
Trading Company
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
(248) 963-6420

---

**BRIEF OF PLAINTIFF MIKE'S TRAIN HOUSE, INC. IN OPPOSITION TO
DEFENDANT MODEL KOREA TRADING COMPANY'S MOTION TO
STRIKE EXHIBITS 3-5 AND 7 OF MIKE'S TRAIN HOUSE, INC.'S BRIEF IN
OPPOSITION TO MOTION TO QUASH SERVICE AND TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................. ii

STATEMENT OF ISSUE PRESENTED.......................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ......................................... iv

I.      INTRODUCTION ................................................................................................... 1

II.     THE EXHIBITS AT ISSUE................................................................................... 1

        A.      Mike's Exhibits 3 Through 5. ..................................................................... 1

        B.      Mike's Exhibit 7. ........................................................................................ 2

III.    EXHIBITS 3-5 AND EXHIBIT 7 OF MIKE'S RESPONSE BRIEF SHOULD
        NOT BE STRICKEN ............................................................................................. 3

        A.      Mike's Exhibits 3 Through 5 Are Authentic Documents Received In
                Response To A Subpoena Duly Served On Weaver Models. ....................... 3

        B.      Mike's Is Willing To Rely On Model Korea's Version Of The Transfer
                Agreement And Substitutes That Version For Mike's Exhibit 7. .............. 6

IV.     CONCLUSION........................................................................................................ 7

SL1 638197v1/035063.00003

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*United States v. Damrah,*
    412 F.3d 618 (6th Cir. 2005) ............................................................................................. 4-5

**RULES**

Fed. R. Evid. 901 ................................................................................................... 1, 4-5

Fed. R. Evid. 901(a)...................................................................................................4

Fed. R. Evid. 901(b)(4)............................................................................................4

## STATEMENT OF ISSUE PRESENTED

(1)     Should the Court deny Model Korea Trading Company's Motion to Strike
        Exhibits 3-5 and Exhibit 7 of Mike's Train House, Inc.'s Brief in
        Opposition to Model Korea Trading Company's Motion to Quash Service
        and Dismiss the Complaint for Lack of Personal Jurisdiction?

        [Plaintiff Mike's Train House, Inc.'s Suggested Answer:  Yes.]

SL1 638197v1/035063.00003

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Evid. 901

## I.    INTRODUCTION

In the response of Mike's Train House, Inc. ("Mike's) to the motion of Model Korea

Trading Company ("Model Korea") to quash service and dismiss the complaint, Mike's attached

various exhibits demonstrating the successor and/or alter ego relationship between Model Korea,

Hagye Trading Company ("Hagye"), and Korea Brass Co., Ltd., which is liable to Mike's for

this Court's $27 million judgment for willful and malicious misappropriation of Mike's trade

secrets.  Distressed by these revelations, Model Korea moved to strike Exhibits 3 through 5 and

Exhibit 7 of Mike's Response Brief on the ground that those exhibits have not been sufficiently

authenticated under Federal Rule of Evidence 901.  For the reasons that follow, Model Korea's

motion to strike Exhibits 3 through 5 and Exhibit 7 of Mike's Response Brief should be denied.

## II.    THE EXHIBITS AT ISSUE

### A.    Mike's Exhibits 3 Through 5.

Exhibits 3 through 5 of Mike's Response Brief are documents evidencing certain

communications between Model Korea General Manager, Sung Oh Cho, and Mr. Joseph Hayter,

president of Weaver Models, Inc.  See Affidavit of Jeffrey D. Bukowski dated June 1, 2006

("Bukowski Affidavit") ¶ 4 (attached as Exhibit A hereto).  Those communications demonstrate

the continuity between Korea Brass, on the one hand, and Hagye and Model Korea on the other.

On June 16, 2004 – barely a week after the Michigan jury's verdict – Mr. Hayter asked

Sung Oh Cho, then working for Korea Brass, whether the jury verdict would make it difficult for

Korea Brass to continue supplying products to Weaver.  Mike's Exhibit 3.  Mr. Hayter later

asked Sung Oh Cho, now acting on behalf of Hagye, whether Hagye was a "complete change of

company."  On September 3, 2004, Sung Oh Cho explained that "Korea Brass remained for

1

Lawsuit and [closed] the door for [assembly] line." Mike's Exhibit 4.  On April 9, 2005, in an

e-mail announcing the change in company name from Hagye to Model Korea, Sung Oh Cho

said, "The E-mail address is the same as previous used both address[es]." Mike's Exhibit 5.  The

e-mail shows the Model Korea e-mail addresses as "hgt001@hanafos.com" and

"hkbrass@hanafos.com," e-mail addresses formerly used by both Korea Brass and Hagye.  That

same e-mail also shows one telephone number for Model Korea as 82-2-91-6714, and one fax

number for Model Korea as 82-2-971-7272, which also were used by Korea Brass.

> **B.    Mike's Exhibit 7.**

Exhibit 7 of Mike's Response Brief is an English translation of a June 22, 2004 Transfer

Agreement between Korea Brass Representative Director Sung Won Cho and Jin Woon Kim, on

behalf of Korea Brass's employees.  Model Korea argues the Court should disregard Mike's

Exhibit 7 because it the Korean version was not included and the attachments are incomplete.

Model Korea attaches to its Motion to Strike Exhibits what it contends to be the complete

Transfer Agreement, both in Korean and an English translation.  See Model Korea Exhibit 1,

Reply Affidavit of Sung Oh Cho ¶¶ 6-9 and attachments.  Mike's has no desire to offer this

Court an incomplete or inaccurate document, and acknowledged the dispute over this issue in its

Response Brief.

Based on Model Korea's representation that its version of the Transfer Agreement is

complete, Mike's is willing to have the Court rely on that version of the Transfer Agreement, and

hereby offers the Transfer Agreement attached to Sung Oh Cho's Reply Affidavit into evidence

as a substitute to Mike's Exhibit 7.  As explained below, Model Korea's version of the Transfer

SL1 638197v1/035063.00003

Agreement and related documents do not diminish the force of any of the arguments in Mike's

Response Brief.

**III.    EXHIBITS 3-5 AND EXHIBIT 7 OF MIKE'S RESPONSE BRIEF SHOULD NOT BE STRICKEN**

      **A.    Mike's Exhibits 3 Through 5 Are Authentic Documents Received In Response To A Subpoena Duly Served On Weaver Models.**

Assuming the Sixth Circuit requires all evidence submitted to establish a *prima facie*

showing of personal jurisdiction to be admissible,[1] Mike's can easily overcome Model Korea's

authenticity objection to Mike's Exhibits 3 through 5.

Each of Mike's Exhibits 3 through 5 are true and correct copies of documents received

directly from Weaver Models in response to a subpoena issued as discovery in aid of execution

in the underlying trade secrets case (the "Subpoena").  Bukowski Affidavit ¶¶ 5-6 and Tab 1.

Copies of the Subpoena were contemporaneously served on counsel of record for Lionel, Korea

Brass, and Mr. Yang in the trade secrets case, with a separate copy being served directly on

Korea Brass and Mr. Yang, by U.S. mail to Mr. Yang's residence (Korea Brass's U.S. office),

because Mr. Moran, counsel of record for Korea Brass and Mr. Yang in the underlying trade

secrets case, communicated that he no longer represented either Korea Brass or Mr. Yang,

although he had not withdrawn his appearance.  Bukowski Affidavit ¶ 7 and Tab 1.

In response to the Subpoena, Mr. Joseph Hayter, Weaver's president, sent responsive

documents to Mike's counsel, including those documents attached as Exhibits 3 through 5 of

Mike's Response Brief, along with a signed and sworn "Verification of Records Custodian."

---

[1]    Model Korea does not cite any Sixth Circuit authority to support its argument that a *prima facie* showing of personal jurisdiction requires all evidence to be admissible, but rather relies on district court decisions from California, Arizona, and Massachusetts.

SL1 638197v1/035063.00003

Bukowski Affidavit ¶ 8, Tab 2.  In his Verification of Records Custodian, Mr. Hayter stated, under oath, that the documents provided "are true and correct copies of the records in my custody pertaining to those documents requested in Schedule A," that they were "photocopied at my office, in my presence, at my direction and under my supervision," and that "all records produced in my presence were prepared in the ordinary course of business by authorized personnel at or near the time of the act, condition or event." Bukowski Affidavit ¶¶ 9-10, Tab 2.

The handwriting on Exhibits 3 through 5 of Mike's Response Brief appeared on those documents when they were received from Weaver Models by Mike's counsel, and was not put there by anyone on behalf of Mike's.  Bukowski Declaration ¶ 11.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).  "The key question under Federal Rule of Evidence 901 is whether 'the matter in question is what its proponent claims.'" United States v. Damrah, 412 F.3d 618, 628 (6th Cir. 2005).  In this case, Mr. Hayter's Verification of Record Custodian is sufficient authentication for Mike's Exhibits 3 through 5 under Federal Rule of Evidence 901.[2]

In addition, even without Mr. Hayter's authentication, the distinguishing characteristics of Mike's Exhibits 3 through 5, on their face, demonstrate they are what they are claimed to be. "The Advisory Notes to Rule 901(b)(4), which provides that evidence may be authenticated by distinctive characteristics, state: 'The characteristics of the offered item itself, considered in the

---

[2]    If the Court concludes Mr. Hayter's Verification of Records Custodian is insufficient authentication or otherwise concludes Mike's Exhibits 3 through 5 have not been sufficiently authenticated, Mike's respectfully requests an opportunity to take Mr. Hayter's deposition.

4

light of circumstances, afford authentication techniques in great variety.'" Damrah, 412 F.3d at 628. "Thus a document . . . may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him; . . . similarly, a letter may be authenticated by content and circumstances indicating it was in reply to a duly authenticated one." Fed. R. Evid. 901, Advisory Committee Notes, Example (4).

Mike's Exhibits 3 through 5 include eight e-mail communications between Sung Oh Cho, on behalf of various related entities – Korea Brass, Hagye and Model Korea – and Weaver Models. Each of the e-mails from Sung Oh Cho appears to contain the identity or e-mail address of the sender and recipient, the date and time of the communication, a salutation, a typed "signature" line, and also appears to be in a format that one would ordinarily expect to see such e-mail communication to appear in a company's files. Each of the Weaver e-mails appears to be a response to Sung Oh Cho. The handwriting was on the documents prior to their receipt by Mike's. Bukowski Affidavit ¶ 11. Based on the Verification of Records Custodian, these documents were maintained by Weaver "in the ordinary course of business by authorized personnel at or near the time of the act, condition or event." Bukowski Affidavit ¶¶ 8-9, Tab 2. Moreover, these communications contain numerous facts regarding Weaver Models' products known peculiarly to Mr. Hayter and Sung Oh Cho or others at their companies. Even if the Court were to disregard the handwriting – which it should not – these communications have been sufficiently authenticated to be admissible.

Most significantly, despite the fact that Sung Oh Cho has submitted yet another affidavit in support of Model Korea's motion to dismiss, nowhere in his affidavit does he or Model Korea contest the fact that these communications occurred or directly challenge the authenticity of

Mike's Exhibits 3 through 5. In fact, despite being a participant in the communications at issue,

Sung Oh Cho's Reply Affidavit does not even mention Mike's Exhibits 3 through 5. Rather, like

the preliminary objections to authenticity of trial exhibits by Model Korea's predecessor Korea

Brass, Model Korea here seeks to put Mikes' through the burden and expense of authenticating

documents they cannot legitimately challenge.[3] Had it known Model Korea would dare to

challenge the authenticity of its own communications, Mike's would have attached Mr. Hayter's

sworn Verification of Records Custodian to its Response Brief.

**B.     Mike's Is Willing To Rely On Model Korea's Version Of The
         Transfer Agreement And Substitutes That Version For Mike's
         Exhibit 7.**

Mike's is willing to rely on the document attached to Model Korea's Reply Brief and

Motion to Strike, which has been sufficiently authenticated by Sung Oh Cho's Reply Affidavit.

Nothing in that version diminishes the force of Mike's arguments that: (1) Korea Brass was

insolvent at the time of the Transfer Agreement by virtue of this Court's $27 million against it;

(2) the Transfer Agreement does not make any provision for payment of Korea Brass's other

creditors, such as Mike's; and (3) the Transfer Agreement does not appear to transfer any assets

other than the attached "List of Machinery and Instruments," such as ongoing contracts with

companies like Lionel; thus, the value of all transferred assets (including contracts) far exceeds

the outstanding liabilities to Korea Brass employees. The fact that existing contracts and

customer relations were transferred is demonstrated by the fact that, within a few months of the

Transfer Agreement, Lionel paid $941,694.00 to Hagye, and listed Hagye as sixth among its

---

[3]     After this Court advised counsel for the parties that authenticity objections should be
made only if there were a legitimate good faith basis to challenge the authenticity of a proffered
trial exhibit, Korea Brass withdrew numerous authenticity objections.

6

twenty largest unsecured creditors with a total amount owed of $31,930.00. Mike's Exhibits 12 and 13. Accordingly, the Transfer Agreement supports Mike's successor liability, alter ego and fraudulent transfer claims in this case. Model Korea simply ignores the possibility that, in addition to its own substantial ongoing business relationship with Lionel in Michigan, which supports this Court's exercise of personal jurisdiction, it can also be liable as a successor and thus have Korea Brass's contacts imputed to it for purposes of establishing personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Model Korea's motion to strike Exhibits 3 through 5 and Exhibit 7 of Mike's Response Brief.

Respectfully submitted,

Dated:  June 1, 2006

   s/Jeffrey D. Bukowski
   Charles J. Bloom (PA 10086)
   Jeffrey D. Bukowski (PA 76102)
   Stevens & Lee, P.C.
   111 North Sixth Street
   P.O. Box 679
   Reading, PA 19603-0679
   (610) 478-2215
   jdb@stevenslee.com

Attorneys for Mike's Train House, Inc.

SL1 638197v1/035063.00003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing paper was filed with the Clerk of Court using the

Court's ECF system, which will send electronic notification of such filing to the following:

<u>Attorneys for Defendant Hagye Trading Co.,</u>
<u>a/k/a Model Korea Trading Co.</u>
P. Rivka Schochet, Esquire
Marcy L. Rosen, Esquire
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
schochet@millercanfield.com
rosen@millercanfield.com

<u>Attorneys for Plaintiff Mike's Train House, Inc.</u>
Jeffrey D. Bukowski, Esquire
jdb@stevenslee.com

Harold Gurewitz, Esquire
hgurewitz@grplc.com, hgurewitz@aol.com, kdeja@aol.com

Robert J. LaRocca, Esquire
rlarocca@kohnswift.com, r.larocca@verizon.net

Margaret S. Raben, Esquire
msraben@aol.com, kdeja@aol.com, gandr@grplc.com

Dated:  June 1, 2006

 s/Jeffrey D. Bukowski
Jeffrey D. Bukowski (PA 76102)
Stevens & Lee, P.C.
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679
(610) 478-2215
jdb@stevenslee.com