UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE'S TRAIN HOUSE, INC.,

      Plaintiff,                                      Case No. 06-10375

v.                                                   Honorable John Corbett O'Meara

KOREA BRASS CO., LTD., *et al.*

      Defendants.
_____/

**OPINION AND ORDER DENYING
DEFENDANT MODEL KOREA TRADING'S APRIL 11, 2006
MOTION TO QUASH SERVICE AND TO DISMISS;
DENYING DEFENDANT MODEL KOREA TRADING'S MAY 15, 2006
MOTION TO STRIKE PLAINTIFF'S RESPONSE TO MOTION;
AND GRANTING PLAINTIFF'S JUNE 1, 2006 MOTION FOR EXCESS PAGES**

This matter came before the court on defendant Model Korea Trading Company's April 11, 2006 motion to quash service and to dismiss and its May 15, 2006 motion to strike Plaintiff's response. Plaintiff Mike's Train House ("Mike's") filed responses May 5, 2006, and June 1, 2006; Defendant filed reply briefs May 15, 2006, and June 5, 2006. Plaintiff filed an *ex parte* motion for leave to file excess pages *nunc pro tunc* on June 1, 2006. Defendant filed a response June 5, 2006. Oral argument was heard June 8, 2006.

**BACKGROUND FACTS**

In June 2004 a federal jury determined that defendant Korea Brass, its U.S. agent Yoo Chan Yang, and Michigan company Lionel willfully and maliciously misappropriated plaintiff Mike's trade secrets. In November 2004 this court entered judgment in favor of Mike's and against Korea

Brass in the principal amount of $27,940,925.  Korea Brass did not appeal the entry of judgment; therefore, the judgment is final as to Korea Brass.[1]

Mike's filed this action January 27, 2006, against Korea Brass, Hagye Trading Company, and Model Korea Trading Company ("MKT"), seeking to enforce the judgment against Korea Brass. Plaintiff contends that Korea Brass closed its business and terminated its workers at the end of June 2004, just a few weeks after the verdict was rendered in the previous suit.  MKT concedes that certain former employees of Korea Brass then "negotiated to acquire certain assets (and no liabilities) from Korea Brass in lieu of unpaid salary, employment and retirement benefits they were owed" by Korea Brass.  The former employees of Korea Brass formed a new business entity originally under the name MT and then Hagye Trading Company.  Upon its formation, Hagye immediately began conducting business with Korea Brass' customers.

Defendant MKT asserts that Hagye "ceased operations" in April 2005 and was "renamed Model Korea Trading Company."  The Korean Business Registration Number is the same for MT, Hagye, and MKT.  MKT contends, however, that Korea Brass has a separate business registration number and is therefore a separate corporate entity.  Plaintiff has attached to its response brief e-mail messages sent by Sung Oh Cho, brother to Sung Won Cho, the president and CEO of Korea Brass who testified in the previous case, to Korea Brass' customers notifying them of the formation of Hagye and providing the new address and banking information.  Further correspondence obtained by Plaintiff seems to indicate the continuity and alter ego status of Korea Brass and MKT. Importantly, in the 90-day period prior to Lionel's filing its bankruptcy petition, Lionel made no payments to Korea Brass but paid Hagye $941,694.  This evidence points to two things: 1) that

---

[1] Lionel, however, did file a timely appeal of the court's judgment and that appeal is pending.

Hagye was the alter ego of Korea Brass, and 2) that Hagye had significant business dealings in Michigan, allegedly supporting a finding of sufficient contacts with Michigan to confer personal jurisdiction here over Hagye and its renamed company MKT.

Defendant MKT has moved to dismiss this action on the following grounds: 1) the court lacks personal jurisdiction over MKT; 2) the form of the court's process was insufficient; 3) service of process was insufficient against MKT; and 4) alternatively, under the doctrine of *forum non conveniens*, the case should be transferred to Korea.

## **LAW AND ANALYSIS**

When presented with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a district court has three procedural options: 1) to decide the motion upon affidavits alone, 2) to permit discovery in order to aid in the decision, or 3) to conduct an evidentiary hearing to resolved any factual disputes. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). When a court is able to decide the motion upon affidavits alone, a plaintiff is required to set forth only a *prima facie* case for jurisdiction in order to avoid dismissal. Id. If the court rules on written submissions alone, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. Id. In this case because there has been no opportunity to conduct discovery regarding Defendant's contacts with Michigan, the court will not hold a full evidentiary hearing.

In determining whether it can assert personal jurisdiction over a nonresident defendant in a diversity case, the court must apply the law of the state in which it sits, subject to due process limitations. Creech v. Roberts, 908 F.2d 75, 79 (6th Cir. 1990).

Mike's seeks to hold MKT liable for this court's judgment against Korea Brass under theories of successor liability, alter ego, piercing the corporate veil, and fraudulent transfer. Under Michigan

3

law, a predecessor corporation's contacts with the forum state are imputed to an alleged successor corporation for purposes of determining the successor corporation's susceptibility to personal jurisdiction.  Perceptron, Inc. v. Silicon Video, Inc., 423 F. Supp. 2d 722 (E.D. Mich. 2006).  In Perceptron, a Michigan judgment creditor brought an action in federal court in Michigan against a debtor's alleged successor corporations, seeking declaration that the successor corporations were liable for a New York arbitration award and a Michigan judgment confirming the award.  The defendants moved to dismiss based on lack of personal jurisdiction and moved to transfer the case to New York.  The court denied the motion to dismiss but granted the motion to transfer.

The Michigan Supreme Court has held,

> the actions of a constituent corporation may be attributed to a surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities allegedly incurred by the constituent corporation.  While we are cognizant that this rule is typically applied to corporations that are the present embodiment of the predecessor, we find the rule equally applicable when a corporation expressly assumes the liabilities of its predecessors.

Jeffrey v. Rapid American Corp. 448 Mich. 178, 198 (1995).

In Perceptron the court found, "This holding does not require that the successor corporation expressly assume the liabilities of its predecessor before the predecessor's contacts can be imputed to it.  The rule already applied to those corporations which were the 'present corporate embodiment of the predecessor.'  Perceptron, 423 F. Supp. 2d at 726.

In this case, the court finds that Korea Brass' contacts with Michigan are imputed to defendants MKT and Hagye and are sufficient to establish personal jurisdiction over Defendants in this action.

Alternatively, MKT's own contacts with Michigan warrant the exercise of general personal jurisdiction over it.  Lionel's bankruptcy filings show that from September 2, 2004, to November 14, 2004, Lionel paid MKT (then known as Hagye) nearly $1 million for model train products shipped to Lionel in Michigan.  MKT presently continues to do business with Lionel by manufacturing model trains in Korea and shipping them to Lionel in Michigan.

Defendant MKT challenges both the sufficiency and the form of process as well as the sufficiency of service of process.  Rule 12(b)(4) permits a defendant to challenge the form of process.  Rule 4(a) requires a summons to be "directed to the defendant."  MKT claims that process was insufficient because there was not a separate summons issued and directed to MKT, only one for Korea Brass.  However, a review of the summonses and returns of service demonstrates that a separate summons was issued and directed to "Hagye Trading Company a/k/a Model Korea Trading Company."  MKT concedes that it is the same company as the previously named Hagye.

The parties disagree on the issue of whether MKT was properly served.  Plaintiff's process server went to the home of Yoo Chan Yang in Charlottesvile, Virginia.  Yang's affidavit states that he refused to accept service from him and told him he was not authorized to accept legal papers on behalf of MKT or any of the named defendants in this action.  Yang states that he did not take possession of the complaint; instead, it was abandoned on his property and retrieved by him more than a month after personal service on him was attempted.  He was designated on the summons as an agent for Korea Brass, a company he says he has not worked for since 2004.  He states that he is not now nor has ever been granted the authority to act as agent for Hagye Trading Company or MKT.  He maintains that he had no business relationship with any of the three named defendants at the time of the attempted service of process.

Plaintiff's process server states the he personally served two sets of papers consisting of a summons and Mike's complaint on Yoo Chan Yang at his residence in Virginia. Plaintiff contends that Yang transmitted the summons and complaint to MKT. Plaintiff argues that the court is permitted to disregard Yang's self-serving statement that he is no longer an agent of MKT. Instead, Plaintiff submits, the court can infer that Yang was a proper agent for service of process by the fact that within 24 days from the date of service, MKT had become aware of this suit and had retained counsel, who entered an appearance and requested an extension of time to respond to the complaint.

In the prior action between these parties, this court found, "The ultimate inquiry on service of process, of course, is that process be served. In this case it was." Court's March 22, 2001 Order at 6. Similarly, although service of process may have been performed better in this case with, say, service in Korea, MKT was apprised of the action, now has a copy of the complaint, and has been able to file the instant motion to dismiss. The court is not inclined to dismiss the case on the merits based on Yang's self-serving affidavit.

Defendant MKT argues that even if the court finds that there have been sufficient contacts with Michigan to impose personal jurisdiction and even if service of process has been effected, the court should transfer this action to Korea under the doctrine of *forum non conveniens*. However, MKT has failed to establish that Korea would be an adequate alternative forum for this litigation, which involves the enforcement of this court's judgment against a Korean company that allegedly continues to conduct business in Michigan. Indeed, even according to MKT's brief, Mike's successor liability and fraudulent conveyance claims may not be viable in Korea.

Even if Korea would be an adequate alternative forum, the private and public interest facts do not outweigh Mike's choice of forum, which is entitled to great deference. Piper Aircraft Co. v.

Reyno, 454 U.S. 235, 255056 (1981).  Private interest factors include relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, possible problems of enforcing a judgment if one is obtained, and all other practical problems that may impede an easy, expeditious trial.  Public interest factors in this case may be even more important, including holding a trial near those most affected by it and holding a trial in a court familiar with the governing law.  Therefore, the court will not transfer this action to Korea.

Also, on May 15, 2006, defendant MKT filed a motion to strike Mike's response to its motion to dismiss based on Mike's failure to authenticate Exhibits 3-5 and 7, which were submitted in support of Mike's response brief.  Exhibit 7 is a copy of the June 22, 2004 transfer agreement between Sung-Won Cho and Jinwoon Kim.  Exhibits 3-5 are a series of email communications that Defendant believes have not been authenticated.

Mike's filed a response to the motion to strike June 1, 2006, and aptly reminded the court that in the previous action at trial, the court advised counsel that authenticity objections should be made only if there is a legitimate, good faith basis to challenge the authenticity of a proffered trial exhibit.  Based on that advice, counsel for Korea Brass withdrew numerous authenticity objections.  The court will deny the motion to strike Mike's response because none of those exhibits is dispositive here.

Finally, MKT requested that the court strike Mike's response because it exceeded the page limit by four pages.  Mike's then filed a motion to file excess pages *nunc pro tunc*.  The court will grant Mike's motion.

## ORDER

It is hereby **ORDERED** that defendant Model Korea Trading Company's April 11, 2006 motion to quash service and to dismiss is **DENIED.**

It is further **ORDERED** that defendant Model Korea Trading Company's May 15, 2006 motion to strike Plaintiff's response brief is **DENIED.**

It is further **ORDERED** that plaintiff Mike's Train House's June 1, 2006 *ex parte* motion for leave to file excess pages *nunc pro tunc* is **GRANTED.**

s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge

Dated: June 20, 2006