UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE'S TRAIN HOUSE, INC.,

        Plaintiff,                  Hon. John Corbett O'Meara

v.                                             Case No. 06-CV-10375

KOREA BRASS CO., LTD., also known as
KOREA BRASS, INC., and MODEL
KOREA TRADING COMPANY also
known as MKT and formerly known as
HAGYE TRADING COMPANY,

        Defendants.
_____/

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

## Findings of Fact

1. On June 7, 2004, following trial, the jury in *Mike's Train House v. Lionel, Korea Brass Co., Ltd., and Yoo Chan Yang*, Civil Action No. 00-CV-71729 (E.D. Mich.) found that defendants, including Korea Brass, had misappropriated the trade secrets of plaintiff, and found damages. The jury determined that: Lionel was liable for $12,834,820 in damages for its unjust enrichment; that Korea Brass and Yang were jointly and severally liable with each other for their unjust enrichment in the amount of $2,167,440; and that all three defendants were jointly and severally liable for $25,773,485 for plaintiff's lost past and future profits.

2. This Court entered judgment consistent with this verdict on November 3, 2004. The total judgment entered against Korea Brass was $27,940,925.

3. Korea Brass and Yang did not appeal this judgment. Their co-defendant, Lionel, did appeal the verdict and judgment, and the Sixth Circuit affirmed this Court's order denying Lionel's motion for judgment as a matter of law, but reversed this Court's order denying Lionel's motion for new trial and remanded for a new trial as to Lionel based upon the errors identified in the appellate decision. *Mike's Train House v. Lionel, LLC,* 472 F.2d 398, 415 (6th Cir. 2006).

4. Mike's Train House began the current action in January, 2006 by filing a complaint alleging that the judgment is final as to Korea Brass, and that the companies named in the caption above are the legal successors to Korea Brass and are liable for that judgment, on theories of successor liability and fraudulent transfer of assets.

5. On November 20, 2007, plaintiff filed a motion for summary judgment on all counts of its complaint. On December 14, 2007, defendants responded in opposition, and cross moved for summary judgment. Plaintiff responded to defendants' cross motion. The Court heard oral argument on January 10, 2008.

6. Plaintiff's motion is based upon evidence consisting primarily of: (a) two affidavits filed by defendants' General Manager, Sung-Oh Cho, earlier in this action, and attachments to those affidavits, explaining the transfer of assets that occurred on June 22, 2004; (b) purchase orders, invoices and payment records of transactions between defendants and two of defendants' customers, Lionel and Weaver, which records plaintiff subpoenaed from Lionel and Weaver; and (c) an affidavit by plaintiff's President, Michael Wolf, setting forth information he located on defendants' internet web-site.

7. Plaintiff asserts that this evidence shows the following:

    a. On June 22, 2004, Korea Brass signed a document purporting to transfer its assets to a new entity, which has been named alternately "MT," "Hagye Trading Company," "Model Korea Trading Company" and "MKT."

    b. The same General Manager who managed Korea Brass from 1999 to June 22, 2004, Sung-Oh Cho, has managed the new entity from the date of transfer to the present. He is the brother of the owner of Korea Brass, Sung-Won Cho.

    c. The new entity, following the transfer, employed the same Korea Brass employees, used the same Korea Brass tooling and machinery, worked on the same Korea Brass model train projects, and occupied the premises next door to Korea Brass. Under the transfer agreement, Korea Brass claimed to retain rights in the tooling and machinery.

d.  Shortly before the transfer, Korea Brass had received purchase orders for at least seven (7) model train projects from two of its customers, Lionel and Weaver, and was in the process of completing those projects at the time of transfer.

e.  The new entity completed those projects and invoiced Lionel and Weaver shortly after the transfer. Sung-Oh Cho, the same General Manager who had managed Korea Brass, signed those invoices on behalf of the new entity.

f.  In at least one case, a project was invoiced to Weaver on July 13, 2004, three weeks after the transfer, using Korea Brass invoice stationery, even though the project in question was supposedly transferred to the new entity on June 22, 2004.

g.  Korea Brass prepared a schedule valuing the projects transferred to the new entity as of June 22, 2004. A comparison of the transfer value compared with what customers paid shows that the seven model train projects were valued for purposes of transfer at the equivalent of $28,000 in total. Lionel and Weaver, shortly after the transfer, paid $1,113,000 for these projects.

h.  The purported reason for the transfer was to pay the "retirement benefits" for 69 Korea Brass current employees who at the time of transfer became employees of the new entity. The total claimed amount of those benefits was the equivalent of $230,000. Plaintiff asserted that the record did not show that this was an actual, current debt of Korea Brass, as these were current employees on June 22, 2004, and further, that Korea Brass' owner, Sung-Won Cho, stated that Korea Brass received revenue of approximately $10 million during 2004. Plaintiff also argued that the record reflected that Korea Brass or the new entity received $1.3 million from Lionel and Weaver alone in the months after the transfer. Plaintiff asserted that any actual retirement benefits owed could presumably be paid from these amounts.

i.  Plaintiff placed in evidence Model Korea Trading's current internet website which claimed credit for having manufactured a series of O gauge engines that Korea Brass manufactured for Lionel between 2000 and 2002.

8. In responding in opposition to plaintiff's summary judgment motion, defendants submitted evidence and argument countering plaintiff's evidence, which defendants claim establish that no fraudulent conveyance occurred and that the defendant companies are not the alter ego or successors to Korea Brass and/or at least raised genuine issues of material fact about the same. Further, defendants asserted that the judgment in the prior lawsuit was vacated as to all parties (appealing or otherwise), and thus, there is no basis for this lawsuit which is premised solely and exclusively upon the continued existence and finality of the prior judgment as to Korea Brass.

9. Defendants also argued that the discovery record is incomplete, that plaintiff's motion was premature, and that the evidence relied upon by plaintiff was outside of defendants' current knowledge and control and that defendants needed more time for discovery.

10. The Court finds there is no genuine disputed issue of material fact as to the transfer of assets on June 22, 2004, as summarized in paragraph (7) above.

11. The Court rejects defendants' argument that they need more discovery, because the facts about the transfer are in defendants' possession or control.

12. The Court declines to strike as untimely the affidavit of Sung-Oh Cho tendered by defendants on January 7, 2008, but finds this affidavit insufficient to support the granting of time to conduct discovery or to create a disputed issue of material fact.

### Conclusions of Law

1. Plaintiff has moved for summary judgment on all counts of its complaint. Count I alleges successor liability between Korea Brass and Model Korea Trading Company (also known as MKT and formerly known as Hagye Trading Company). Counts II and III allege fraudulent transfer from Korea Brass to this new entity in violation of the Uniform Fraudulent Transfer Act, M.C.L.A. 566.31 *et seq*.

2. This Court applies Michigan law to these issues. Michigan law for successor liability requires showing one of the following:

> (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Foster v. Cone-Blanchard Machine Co.*, 460 Mich. 696, 597 N.W.2d 506, 509-510 (1999).

3. The Court finds that all of the above are present on this record. The record shows there was no purpose for the transfer on June 22, 2004 other than to seek to avoid the force and effect of the jury's verdict of June 7, 2004; that the new entity assumed the obligations of the old entity, and was a mere continuation of Korea Brass; that many elements of a good faith purchase were lacking, and that the transfer, taken as a whole, was fraudulent.

4. Accordingly, summary judgment is entered in favor of plaintiff and against defendants as to Count I of plaintiff's complaint. Model Korea Trading Company (under its name, and under its alternate names Hagye Trading Company, MT, and MKT) is determined to be the legal successor to Korea Brass, and is fully liable for the judgment entered against Korea Brass on November 3, 2004.

5. As for Count II and III of the complaint, Michigan has adopted the Uniform Fraudulent Transfer Act, M.C.L.A 566.31 *et seq.*

6. The statute at MCL 566.34 provides that a transfer is fraudulent as to a creditor if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Actual intent to defraud may be inferred from one or more of the "badges of fraud" set forth in the statute. *Coleman-Nichols v. Tixon Corp*, 203 Mich.App 645, 659; 513 NW2d 441 (1994). These include whether, before the transfer, the debtor had been sued; whether the transfer of assets was for less than fair value; whether the transfer was to insiders; and whether the transfer occurred shortly after a substantial debt had been incurred. All of these are present on this record.

5

7. The Court concludes that the transfer of June 22, 2004 was fraudulent under the Uniform Fraudulent Transfer Act, M.C.L.A. 566.31 *et seq.* Accordingly, summary judgment is granted in favor of plaintiff and against defendants on Counts II and III of the complaint.

8. Model Korea Trading Company's cross motion for summary judgment argues that because the Sixth Circuit vacated the judgment entered against Lionel, and remanded for a new trial, as specified in the opinion at 472 F.3d 398 (6th Cir. 2006), that the judgment has therefore been effectively vacated as to all parties (appealing or otherwise) and/or that principles of collateral estoppel apply, pursuant to: *Montana v. United States*, 440 U.S. 147, 153 (1979); *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999); *Shields v Reader's Digest*, 173 F Supp 2d 701, 704 (2001); *Hegger v. Green*, 646 F.2d 22, 30 (2d Cir.1981); *Daniels v. Gilbreath*, 668 F.2d 477, 480 (10th Cir. 1982); *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 743 (5th Cir. 1980); *Hysell v. Iowa Pub. Serv. Co.*, 559 F.2d 468 (8th Cir. 1977); *Arnold's Hofbrau, Inc. v. George Hyman Const. Co., Inc.*, 480 F.2d 1145, 1151 (D.C. Cir. 1973); *Bank of China, New York Branch v. NBM, LLC*, 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004); *Wright* at § 3904, p. 218. Thus, Model Korea Trading asserts that the judgment no longer exists as against Korea Brass or any other entity, including MT, Hagye and/or MKT. Model Korea Trading further asserts that since the instant lawsuit was premised solely and exclusively upon the judgment, the case should be dismissed.

9. In addition, Model Korea Trading's cross motion for summary judgment asserts that there are genuine issues of material fact present as to the claims of successor liability, alter ego and fraudulent conveyance. Alternatively, the cross motion asserts, plaintiff's motion for summary judgment is premature as discovery has barely begun and is not complete and that the facts necessary to adequately defend against the allegations are not within the knowledge and/or control of Model Korea Trading.

10. This Court finds that since Korea Brass did not appeal the judgment, the judgment as to Korea Brass became final by early 2005. The Court further finds that the Sixth Circuit's judgment on Lionel's appeal had no effect on the finality of the judgment as to Korea Brass, *see*

*Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394 (1981) and *Torres v. Oakland Scavanger Co.*, 487 U.S. 312 (1988), and this Court rejects each and every one of the arguments raised by Model Korea Trading, and further rejects Model Korea Trading's request for additional discovery.

      11. This Court rejects defendants' argument that they fall within an exception to *Moitie*. Accordingly, the Court denies defendants' cross motion for summary judgment and for discovery.

      12. This Court also denies Model Korea Trading's Renewed Motion for Stay of the Case pending the outcome of the Interlocutory Appeal for the reason that it deems that said Motion is moot in light of this Court's other rulings.

      13. Because the Court is granting plaintiff's motion for summary judgment on all counts of plaintiff's complaint, plaintiff's motion for preliminary injunction is denied as moot.

      14. For the foregoing reasons, the Court grants plaintiff's motion for summary judgment as to all counts of plaintiff's complaint, and denies defendants' cross motion for summary judgment. An appropriate form of money judgment is being entered by separate document. That judgment and these findings and conclusions constitute final decisions.

                                      s/John Corbett O'Meara
                                        United States District Judge

Date: April 2, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 2, 2008, by electronic and/or ordinary mail.

                                        s/William Barkholz
                                        Case Manager